ROBERT MANNING V. THE STATE.

No. 20666. Delivered December 6, 1939.

The opinion states the case.

*Jas. Tafolla, Jr.,* and *Gus C. Garcia,* both of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant, a negro boy about nineteen years old, weighing 145 pounds, was indicted, together with one Webster Lyons, for the killing of H. W. Seely. There was a request for a severance made by Lyons, which request was granted by the court, and upon a failure of the two defendants to agree as to which one should go to trial first, the court directed that the appellant should be first tried. Upon his trial appellant entered a plea of guilty, and was found guilty of murder with malice by the jury, and given the penalty of death.

There are no bills of exceptions to be found in the record. We are therefore relegated to the statement of facts in our review hereof.

H. W. Seely, the deceased, operated a second-hand clothing store in San Antonio, and on March 7, 1938, he had living quarters in the rear of this store. On such date, after dark, he was evidently struck many times on the side and back of the head with some blunt instrument from the effects of which beating he died in about eleven days thereafter. It was evident that two negroes went into his place of business, and while one of them was trying on an overcoat, the other negro struck Mr. Seely in the back of his head. The deceased was robbed, and his desk was rifled. Mr. Seeley's keys were taken, as was a pistol, later identi-

fied as one thereafter sold by appellant. The appellant made and signed a written confession relative to this matter, and later on in the trial of this case took the stand and practically corroborated his written confession in all its material particulars. There was also introduced a dying statement of Mr. Seely which was corroborative of appellant's statement and testimony at the trial.

We quote the salient portions of appellant's testimony at this trial:

"I have known Webster Lyons for about five years. I heard the confession read here. On the night of March 7, 1938, I was on East Commerce Street at a place where my brother is a bar tender and I was talking to him concerning my brother's death when Webster Lyons walked in and he said that he had heard my brother had died and said he would like to go to the funeral with me, and I told him he could go and he replied when he went to any place like that he wanted money of his own. I told him I had enough money to go down there, but he said he wanted money of his own. He then said he knew where he could get money and I asked him where and he said, 'Come with me.' Then we left the place. When he told me he knew where he could get money, I did not know where he meant or how he was going to get it. We went around behind the San Antonio Machinery Company on the railroad tracks near the railroad express company and we sat on the platform and he began to discuss where he intended to get the money. He said he was going to Mr. Seely's and that he had once worked for Mr. Seely and he knew Mr. Seely had a large sum of money around the place all the time. He told me if I would go with him he would cut even with me and that there was a lot of easy money for both of us. I told him I did not want to go into anything like that and that I had never done anything like that before. I told him I did not want to go into anything like that.

"I went with him because I had been in trouble with Lyons before and he told me if I ever refused to go with him any place he would tell Mrs. Carter I had been running around with him. I told him I would go. We picked up an iron bolt and walked right by Mr. Seely's place and we saw that he had a customer in there and we waited for about fifteen minutes and then went into Mr. Seely's place. Webster Lyons said, 'We will go in there with the understanding I am going to try on a coat, and while I am trying on the coat you hit the old man,' and I told him, 'I don't want to hit him,' and then he said, 'You had better do it.' We went in there and Webster suggested that he wanted to

buy a coat because he was going to take a trip out of town, and Mr. Seely took him to the rear where he kept the coats and Webster tried on several coats and kept motioning to me to hit the old man. He came to me and said, 'Give me a dollar,' and told me to hit the old man. When he asked me for the dollar he said, 'Robert go ahead and hit the old man.' He said, 'If you don't I will fix you up.' I said, 'All right' and he went back to Mr. Seely again. I was then standing to the rear and Mr. Seely was standing between me and Webster, and was facing Lyons. Then Webster Lyons was stretching his arms like he was trying to see whether the coat was too tight or not, and then I hit him and he fell to the floor face forward into the clothes rack and then Lyons turned out the lights and closed the door and came back and said to me, 'Don't be standing there like a fool.' He said, 'Give me that bar and go over and see if you can open the desk.' I handed him the bar and went to the desk and shortly after I was at the desk Mr. Seely started groaning.

"This bar you show me is the bar I am talking about, and it is the bar I gave to Lyons. When I was at the desk I was looking through the drawers, and Mr. Seely was still groaning and I heard Lyons hit him two or three times. I went to Webster and said, 'Stop hitting him. Don't hit him any more.' He asked me if I got the desk open and I told him I had and he asked me if I had found anything and I told him I had not had time to go through it. I opened the big drawer in the desk. Lyons told me to go back to the desk and see if I could find anything and I went back and found a pistol and put the pistol in my pocket. Lyons then said that we had better go out because people were walking up and down the street, and we went out the front door."

It seems that these two then went to a pawn shop where certain clothes were redeemed and some new ones purchased, and then appellant and his companion took the train to San Marcos, where appellant's brother was buried on that day. That while at San Marcos appellant sold this pistol, which was later identified as Mr. Seely's, for $5.00 and his connection with such sale was clearly established by the testimony. In fact it is only necessary, in order to find the reason for this severe penalty, to read the testimony of the appellant given at his trial. It appears therefrom that he and a companion planned this robbery beforehand, down to its minute details, even to the place of the assault upon their victim, and that all of such details were carried out according to prearranged schedule.

There were many corroborating circumstances introduced by the State, and the reviewing mind is led to the conclusion

that as near as human testimony is concerned, there can be no doubt not only of appellant's acknowledged guilt but also no doubt of the malice employed in such killing. There are no further matters presented to us for review.

The judgment is affirmed.